Gary Minevich, Cal. (SBN #256136)
Minevich Law, APC
21700 Oxnard St, Ste. 950
Woodland Hills, CA 91367
Tel. 818.878.8740
Fax: 818.878.8745
Email: habeas@minevichlaw.com

Attorney for Petitioner

**DETAINED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gevork KHACHATURIAN,<br><br>Petitioner,<br>v.<br><br>Thomas P. GILES, Acting Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>Todd BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;<br><br>JAMES JANECKA, in his official capacity as warden of the Adelanto ICE processing center;<br><br>Respondents. | Case No.<br><br>A-246-594-569<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**<br><br>Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief |

**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**

*(Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief)*

**STATEMENT OF FACTS**

1. Petitioner Gevork Khachaturian is a citizen of RUSSIA. He entered the United States at or near San Luis, Arizona, on or about December 20, 2022, was apprehended by U.S. Customs and Border Protection, and on December 22, 2022 was paroled into the United States pursuant to INA § 212(d)(5) and released into the interior of the United States. See Exhibit "A" — Form I-385 Alien Booking Record and Parole Documentation.

2. Petitioner fled RUSSIA to escape persecution for his political opinion. As a result of that persecution, Petitioner timely submitted a Form I-589 Application for Asylum and for Withholding of Removal, which was received by USCIS on November 6, 2023, within one year of his arrival in the United States (Receipt No. LGL2490034653). Petitioner's I-589 was filed on behalf of himself, his spouse Narine Sagradyan (A 246-594-570), and his minor children Emil Khachaturian (A 246-594-571) and Milena Khachaturian (A 246-594-572), who are derivative applicants. See Exhibit "B" — Form I-797C Receipt Notice.

3. Petitioner has resided in the United States for approximately 3 years and 8 months.

4. Petitioner has continuously resided in Los Angeles County, California (first in North Hollywood and then in Glendale), since on or about December 22, 2022.

5. Prior to his detention, Petitioner held valid employment authorization: USCIS approved his Form I-765 Application for Employment Authorization (category C08) on May 16, 2024, valid from May 15, 2024 through May 14, 2029. See Exhibit "C" — Form I-797

EAD Approval Notice. He founded and successfully developed "Hang Loose Hawaiian Shaved Ice," a coffee shop based in Glendale.

6. On September 1, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") when he appeared, as instructed, for his regularly scheduled ICE check-in appointment at the Los Angeles Field Office, 300 North Los Angeles Street — nearly four years after his entry and parole into the interior.

7. Petitioner is currently detained at the Adelanto Detention Facility in Adelanto, California.

8. Petitioner has no criminal convictions. His sole contact with the criminal justice system was a single misdemeanor petty theft charge (Cal. Penal Code § 484(a)) filed in the Los Angeles Superior Court, Glendale Courthouse, in August 2023. Petitioner was released on his own recognizance throughout that proceeding, appeared as ordered, and accepted the court's judicial diversion offer pursuant to Penal Code § 1001.95. He successfully completed diversion — including 30 hours of community service and a 12-hour anti-theft course — and on April 15, 2024, on the People's own motion, the charge was dismissed pursuant to Penal Code § 1385. See Exhibit "E" — Certified Superior Court Records. Petitioner has otherwise consistently complied with U.S. law and maintained a strong record of personal responsibility.

9. Petitioner has appeared for every appointment DHS has ever scheduled for him: his biometrics appointment on December 21, 2023, and each of his ICE check-in appointments, including on February 18, 2024, April 20, 2026, July 15, 2026, July 20, 2026, August 18, 2026, and September 1, 2026 — the very appointment at which he was arrested. See Exhibit "D" — ICE Appointment Confirmations. Petitioner has demonstrated his intention to comply with all conditions of his release.

10. Petitioner's Form I-589 asylum application remains pending.

11. Petitioner's spouse, Narine Sagradyan (A 246-594-570), and his minor children, Emil Khachaturian (A 246-594-571) and Milena Khachaturian (A 246-594-572), are present in the United States and are co-applicants (derivative beneficiaries) on Petitioner's Form I-589 Application for Asylum. Petitioner's immediate family ties in this country are among the strongest possible indicators that he will not abscond and will instead remain to pursue his asylum claim and be reunited with his wife and children.

12. Petitioner has now remained in ICE immigration detention since September 1, 2026. During this detention, Petitioner has suffered significant physical and mental health deterioration. His continued confinement has caused and continues to cause serious harm.

13. Since his arrest, ICE has not set bond and has provided Petitioner no individualized custody determination of any kind. No neutral adjudicator has ever found — by any standard of proof — that Petitioner is a flight risk or a danger to the community.

14. Petitioner's arrest and detention are not premised on any changed circumstance. Petitioner was paroled into the United States in December 2022 after DHS itself determined that his release was appropriate, and for nearly four years thereafter he complied with every condition of that release, appeared at every scheduled check-in, timely filed for asylum, and obtained and maintained employment authorization. Nor can Petitioner's single dismissed misdemeanor charge supply any changed circumstance: it was dismissed on April 15, 2024, and ICE thereafter continued Petitioner on routine, non-detained check-in supervision for more than two additional years — through check-ins on April 20, 2026, July 15, 2026, July 20, 2026, and August 18, 2026 — before detaining him on September 1, 2026.

15. Respondents detained Petitioner not based on his personal circumstances or individualized facts, but pursuant to a policy of re-detaining paroled, compliant asylum applicants when they appear for their scheduled check-in appointments — a practice that punishes precisely the compliance that conditions of release are designed to secure.

16. Because Petitioner was paroled and released into the interior of the United States, where he has been physically present for nearly four years, Petitioner has a protected liberty interest in his continued release, and his re-detention without any individualized determination or bond hearing cannot lawfully justify his continued civil detention.

17. Respondents now seek to keep Petitioner detained without a meaningful opportunity to seek a bond hearing. See 8 U.S.C. § 1225. Respondents do so based not on Petitioner's personal circumstances or individualized facts, but on a mechanical position that paroled entrants are categorically ineligible for bond, applied without regard to Petitioner's actual immigration history and years of compliance.

18. Respondents cannot evade due process requirements so easily. The U.S. Constitution requires Respondents to provide at least the rights available to Petitioner at the time he filed his application for relief.

19. The Constitution protects Petitioner — and every other person present in this country — from arbitrary deprivations of his liberty and guarantees him due process of law. The government's power over immigration is broad, but as the Supreme Court has declared, it "is subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint [has] always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

20. Petitioner seeks declaratory and injunctive relief to compel his immediate release from the immigration jail where he has been held by DHS since being unlawfully detained, without first being provided a constitutionally adequate hearing to determine whether his incarceration is justified.

21. Petitioner has a protected liberty interest in remaining out of custody. Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. Respondents' re-detention of Petitioner — without any individualized custody determination, and despite DHS's own prior determination that his release on parole was appropriate — denied Petitioner of his due process rights.

22. Absent review in this Court, no other neutral adjudicator will examine Petitioner's rights: Respondents will continue — unchecked — to detain him unlawfully under 8 U.S.C. § 1225(b)(1), INA § 235(b)(1), without due process.

23. Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to release Petitioner from detention within 10 days.

24. Petitioner's continued detention is arbitrary and unlawful, and he requests that this Court order his immediate release from ICE custody.

## JURISDICTION

25. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

26. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

27. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

28. Federal District Courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *Zadvydas*, 533 U.S. at 687.

29. Federal courts also have federal question jurisdiction, through the Administrative Procedure Act ("APA"), to deem unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with law. 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (judicial review of agency action under the APA may be proceeded by any applicable form of legal action, including but not limited to habeas corpus). The APA affords a right of review to a person who is adversely affected or harmed by agency action.

**VENUE**

30. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is detained within this district at the Adelanto Detention Facility in Adelanto, California. Furthermore, a substantial part of the events or omissions giving rise to this action occurred and continue to occur within this district. No real property is involved in this action. 28 U.S.C. § 1391(e).

**CUSTODY AND REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243**

31. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the Respondents "forthwith" unless Petitioner is not entitled to relief. Under 28 U.S.C. § 2243, once an order to show cause issues, the respondent must ordinarily file a return within three days, unless the court for good cause allows additional time, not exceeding twenty days.

32. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

33. Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241 because he was arrested by Respondents and remains in their legal and physical custody at the Adelanto Detention Facility in California. He is under Respondents' and their agents' direct control.

**PARTIES**

34. Petitioner Gevork Khachaturian is a citizen of RUSSIA who has been in immigration detention since September 1, 2026, when he was arrested at his scheduled ICE check-in appointment in Los Angeles, CA. ICE did not set bond and has provided no individualized custody determination. Petitioner has resided in the United States since 2022.

35. Respondent Thomas P. GILES is the Director of the Los Angeles Field Office of ICE’s Enforcement and Removal Operations Division. As such, Thomas P. GILES is Petitioner’s immediate custodian and is responsible for Petitioner’s detention and removal. He is named in his official capacity.

36. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

37. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

38. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

39. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

40. Respondent JAMES JANECKA is the Warden of the Adelanto ICE processing center, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## LEGAL FRAMEWORK

### ICE'S CONTINUED DETENTION OF PETITIONER, WITHOUT REVIEWING HIS CUSTODY UNDER ICE POLICY, VIOLATES THE ADMINISTRATIVE PROCEDURE ACT AND DUE PROCESS.

41. ICE's long-standing policy is to release noncitizens immediately following a grant of asylum or other relief absent exceptional circumstances.

42. Under the *Accardi* doctrine, which originated in the context of an immigration case and has been developed through subsequent immigration case law, agencies are bound to follow their own rules that affect the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. *See Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954) (holding that BIA must follow its own regulations in its exercise of discretion); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures … even where the internal procedures are possibly more rigorous than otherwise would be required.").

43. The requirement that an agency follows its own policies is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is "mandatory rather than merely precatory." *Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977); *see also Morton*, 415 U.S. at 235-36; *United States v. Heffner*, 420 F.2d 809, 813 (4th Cir. 1969).

44. When agencies fail to adhere to their own policies as required by *Accardi*, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA, *see Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018), or as a due process violation, *see Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny

adequate notice and consequently may result in a violation of an individual's constitutional right to due process.").

45. Prejudice is generally presumed when an agency violates its own policy. *See Montilla*, 926 F.2d at 167 ("We hold that an alien claiming the INS has failed to adhere to its own regulations … is not required to make a showing of prejudice before he is entitled to relief. All that needs be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them."); *Heffner*, 420 F.2d at 813.

46. To remedy an *Accardi* violation, a court may direct the agency to properly apply its policy, *see Damus*, 313 F. Supp. 3d at 343, or a court may apply the policy itself and order relief consistent with the policy. *See Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained … while ICE attempts to remedy its failure").

47. Here, Petitioner falls squarely into this category: ICE — by re-detaining a paroled, fully compliant asylum applicant without any individualized custody review — has failed to act as required by its procedures and by controlling law, and Petitioner's continued detention requires this Court's intervention.

## CLAIMS FOR RELIEF

### GROUND ONE
### VIOLATION OF FIFTH AMENDMENT RIGHT TO DUE PROCESS

*Petitioner has the right to challenge the legality of his detention.*

48. The allegations in the above paragraphs are realleged and incorporated herein.

49. Petitioner has due process rights to challenge his detention. *Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (while noncitizens outside the United States' "geographic borders" lack constitutional protections, all "persons" within them are protected by the Due Process Clause, regardless of immigration status); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022) (though constitutional rights of citizens and noncitizens "are not coextensive," noncitizens are entitled to due process, including to challenge detention pending proceedings).

50. As the Ninth Circuit held, the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. *Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), *abrogated on other grounds by Wilkie v. Robbins*, 551 U.S. 537 (2007); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). The Due Process Clause allows Petitioner to challenge his detention.

51. Petitioner challenges his deprivation of liberty and detention, not the adequacy of the procedures the immigration laws afford him with respect to admission. Petitioner is solely challenging his detention and the denial of bond based on the Immigration Judge's factually erroneous conclusion that he was apprehended upon entry. He is not bringing a constitutional claim with respect to the procedures governing his legal admission into the United States.

52. To the extent Respondents take the extraordinary position that Petitioner has no due process rights at all, that is unsupported by law and would have gruesome practical consequences: "If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not

torture or summarily execute them. … [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment." *Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc); *see also Jean v. Nelson*, 472 U.S. 846, 874 (1985) (Marshall, J., dissenting). Thus, there is no question that Petitioner has the right to challenge the constitutionality of his prolonged detention under the Due Process Clause of the Fifth Amendment of the Constitution.

53. The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g., Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk or a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless he no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

54. This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. *See, e.g., Karakhanyan v. Warden of Otay Mesa Detention Center*, 3:25-cv-03454-JO-MMP; *Romik Parunakyan v. Warden of Otay Mesa Detention Center*, 25-cv-3739-LL-MSB; *L.S. v. Warden of Otay Mesa Detention Center*; *M.F. v. Warden of Otay Mesa Detention Center*, 3:25-cv-3599-CAB-MSB; *Vikas Kumar v. Christopher Larose, Warden, Otay Mesa Detention Center*, 25-CV-

3796 JLS (DDL); *Aigul Kazybayeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00421-GPC-MMP; *Dariya Karmamoldoyeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00423-GPC-MSB; *Dugar Dambaev v. Warden, Imperial Detention Center*, 26-cv-1182-JO-SBC; *Roman T. v. Warden, Golden State Annex Detention Facility*, 1:26-cv-02385-TLN-JDP.

55. Likewise, in *Liping Zhao v. Christopher J. Larose*, 26-cv-1285-JES-DDL, this Court granted a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting release on recognizance on due process grounds.

56. Furthermore, relief was granted in similar matters. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Duong v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2689266, at *7-10 (N.D. Cal. 2025); *Pinchi*, 2025 WL 2084921, at *5; *Gonzalez Salazar*, 2025 WL 3063629, at *6; *Abdul Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 WL 2932654, at *6 (S.D. Cal. Oct. 15, 2025); *Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025).

57. ICE has violated Petitioner's due process rights by denying Petitioner a lawful, individualized bond determination. Specifically, ICE arrested Petitioner at his scheduled check-in appointment and has detained him ever since without setting bond and without any individualized finding — let alone one by clear and convincing evidence — that he is a flight risk or a danger, when in fact Petitioner was paroled into the United States on December 22, 2022 and had resided in the interior of the United States, in full compliance with all conditions of his release, for nearly four years before his ICE arrest.

58. As a remedy, this Court should conduct its own review of Petitioner's custody and order his release, recognizing that Petitioner was paroled and released into the interior and has a protected liberty interest in his continued release.

**GROUND TWO**

**VIOLATION OF 8 U.S.C. § 1231(a)(6) AND THE DUE PROCESS CLAUSE**

*Detention, whether styled as mandatory or discretionary, is subject to constitutional limits.*

59. The allegations in the above paragraphs are realleged and incorporated herein.

60. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

61. Petitioner has an interest in remaining with his community, reuniting with his wife and minor children, working, and continuing the process of seeking asylum. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972) ("Subject to the conditions of his release on recognizance, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachment of normal life.").

62. The risk of an erroneous deprivation of Petitioner's liberty interest is high. Respondents re-detained Petitioner without any individualized custody determination at all. There is no individualized finding — let alone one supported by clear and convincing evidence — that Petitioner is a danger to the community or a flight risk. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017).

63. Petitioner has no criminal convictions. His only contact with the criminal justice system — a single misdemeanor petty theft charge — was dismissed on April 15, 2024 pursuant to Penal Code § 1385 after Petitioner successfully completed judicial diversion under Penal

Code § 1001.95, and he remained on his own recognizance and appeared as ordered throughout. He has had work authorization. "Once a noncitizen has been released, the law prohibits federal agents from rearresting [him] merely because he is subject to removal proceedings." Saravia, 280 F. Supp. 2d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances — namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." Id. A misdemeanor charge that the People themselves moved to dismiss more than two years before Petitioner's re-detention — and after which ICE continued Petitioner on non-detained supervision for over two years — is not such evidence. Respondents have not presented — and cannot present — any such evidence.

64. The government's interest in detaining Petitioner is "low." See Pinchi, 2025 WL 2084921, at *5; Matute, 2025 WL 2817795, at *6; Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019). Respondents cannot point to any legitimate interest served by Petitioner's continued detention, nor any burden on the government from releasing Petitioner to the conditions of supervision he faithfully observed for nearly four years.

65. Therefore, because Respondents have continued to detain Petitioner without any individualized custody determination or bond hearing — despite his parole, his nearly four years of continuous residence and full compliance, and DHS's own prior determination that his release was appropriate — Petitioner's detention violates the Due Process Clause and is unlawful. See, e.g., Alegria Palma v. Larose, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025); Navarro Sanchez, 2025 WL 2770629, at *5.

66. Petitioner's continued detention, without any lawful, individualized custody determination and without proper factual or legal foundation, denies Petitioner his due process rights. His continued detention violates 8 U.S.C. § 1231(a)(6), and he must be immediately released.

67. Furthermore, Petitioner is challenging his detention on constitutional grounds, not statutory grounds alone. Notwithstanding the fact that he is being detained pursuant to section 1225(b), Petitioner's detention is unequivocally subject to constitutional limits. The Supreme Court has not precluded noncitizens from bringing as-applied constitutional challenges to their mandatory detention. *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "did not explicitly address constitutionality arguments." Likewise, while *Demore v. Kim*, 538 U.S. 510 (2003), rejected a facial challenge to mandatory detention under § 1226(c), the Supreme Court has explicitly recognized the availability of judicial review over as-applied challenges to detention, including mandatory detention. *See, e.g., Nielsen v. Preap*, 586 U.S. 392, 420 (2019); *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. *See, e.g., Vikas Kumar v. Christopher Larose*, 25-CV-3796 JLS (DDL); *Aigul Kazybayeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00421-GPC-MMP; *Dariya Karmamoldoyeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00423-GPC-MSB (granting a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting parole on due process grounds).

68. This Court should so hold as well.

## GROUND THREE

## ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

*Petitioner's ongoing detention — the re-detention of a paroled, fully compliant asylum applicant without any individualized custody determination — is arbitrary and capricious, and his immediate release is required.*

69. The allegations in the above paragraphs are realleged and incorporated herein.

70. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

71. Respondents' detention of Petitioner is arbitrary and capricious because it rests on no individualized assessment whatsoever and is flatly contradicted by the undisputed record. Petitioner entered the United States on December 20, 2022, was paroled on December 22, 2022 pursuant to INA § 212(d)(5), was thereafter released into the interior, resided continuously in Los Angeles County, complied with every check-in and reporting obligation, and was only arrested by ICE when he appeared, as instructed, at his scheduled September 1, 2026 check-in — nearly four years after his entry. His continued detention is therefore not in accordance with law, and he must be released.

72. The Ninth Circuit in Singh stressed that "it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual — deprivation of liberty — is so significant." See Singh, 638 F.3d at 1205; Black, 103 F.4th at 157-58 (observing that where "an individual's liberty is at stake, the Supreme Court has consistently used [a clear and convincing] evidentiary standard for continued detention"); id. at 159 (reiterating that the government bears the burden of meeting this standard even where an individual is detained pursuant to mandatory detention). This Court should likewise hold the government to its heavy burden to justify Petitioner's continued civil detention — a burden Respondents cannot carry on this record — and order his release.

73. Moreover, any legitimate government interest in securing Petitioner's appearance at future proceedings can be fully served by alternatives to detention — as it was for nearly four years — including the conditions of his preexisting release. See, e.g., Hernandez, 872 F.3d at 994 ("If the government is setting monetary bonds to ensure appearance at future proceedings, there is no legitimate reason for it not to consider the individual's financial circumstances and alternative conditions of release.").

74. Thus, due process and Ninth Circuit precedent require that the government bear the burden of justifying Petitioner's ongoing and prolonged detention by clear and convincing evidence, on a lawful and accurate factual basis. Respondents have never attempted — and on this record cannot — carry that burden. The only adequate remedy is Petitioner's immediate release.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a) Assume jurisdiction over this matter;

b) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

c) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(6);

d) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner;

e) Enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal;

f) Enjoin Respondents from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures;

g) Enjoin Respondents from removing Petitioner unless they provide written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; and

h) Grant any further relief this Court deems just and proper.

DATED 4th day of September 2026

Respectfully submitted,



Gary Minevich, Esq.

Attorney for Petitioner